### No. 2315

### Second Circuit

---

## NOBLE v. SOUTHLAND LUMBER COMPANY, INC.

---

(April 24, 1926. Opinion and Decree.)

---

*(Syllabus by the Court.)*

1. **Louisiana Digest—Estoppel—Par. 1, 31.**
A plaintiff who thinks himself an employee of the defendant and so testifies, un-

der a statement of facts that clearly shows he is not, does not bar himself from the right to sue for damages under Article 2315 of the Civil Code.

Appalachian Corporation vs. Brooklyn Cooperage Company, 151 La. 41, 91 South. 539.

2. **Louisiana Digest—Master and Servant —Par. 153, 154.**

Before a plaintiff can be barred from recovering damages under Article 2315 of the Civil Code, he must not only think he is an employee of the defendant but must actually be such under circumstances that would make the defendant liable to respond to plaintiff in a suit under the Workmen's Compensation Act. All persons not included in the Workmen's Compensation Act are excluded therefrom and free to sue for damages under the general law.

3. **Louisiana Digest—Negligence—Par. 11.**

A carpenter who applies for work on a building in course of construction and is told by the foreman to wait until he can see if he needs his services, becomes an invitee during the time he is waiting on the foreman to make his investigation.

Bell vs. Southern R. R. Company, 132 La. 88, 60 South. 1029.

4. **Louisiana Digest—Negligence—Par. 11.**

A corporation having a building constructed under the supervision of its own foreman is responsible in damages to one injured by a plank falling from the building onto his head while he is thus waiting as an invitee.

5. **Louisiana Digest—Master and Servant —Par. 105, 144.**

Where the cause of an accident resulting in damage to plaintiff is more properly within the knowledge of defendant, proof of the accident itself makes out a prima facie case of negligence on the part of defendant under the doctrine of res ipsa loquitur and the burden is on defendant to show absence of negligence on its part.

Dodson vs. La. Central Lumber Co., 144 La. 78, 80 South. 205.

Lykiardopolilos vs. N. O. Light and P. Co., 127 La. 309, 53 South 575.

White vs. Maison Blanche Co., 142 Lo. 265, 76 South. 708.

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo. Hon. J. R. Stephens, Judge.

Action by Eliot M. Noble against Southland Lumber Company, Inc.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

W. W. McDonald, of Shreveport, attorney for plaintiff, appellee.

E. W. & P. N. Browne, of Shreveport, attorneys for defendant, appellant.

## STATEMENT OF THE CASE

REYNOLDS, J.  Plaintiff, a carpenter, applied to defendant's foreman for employment on a building of defendant's in course of construction and was told to wait a minute until he, the foreman, could ascertain if he needed plaintiff's services; and while so waiting a piece of plank fell from the building on to plaintiff's head, causing a severe injury.

Plaintiff brought this suit to recover damages for the injuries so received.

Defendant denied liability, and, in the alternative, alleged that plaintiff was

guilty of contributory negligence; that he was a trespasser on its premises; that he knowingly and voluntarily unnecessarily exposed himself to danger; and that he was warned by its foreman to avoid the danger.

On these issues the case was tried by a jury and judgment was rendered in favor of plaintiff for $500.00.

Defendant appealed and plaintiff has answered the appeal and asked that the damages be increased to the amount claimed in the petition, $10,450.00.

## OPINION

On the trial of this case plaintiff testified that he was employed by defendant's foreman on the Saturday preceding the day the accident occurred. He testified, pages 3, 4, 5, 8, 17, 18 and 20:

"Q. Now, did you go back to the premises on the following Monday morning?

"A. Yes, sir, I did.

"Q. Did you see this gentleman there again?

"A. Yes, sir, this same man.

"Q. Did you have any conversation with him that morning about going to work?

"A. Nothing—only I walked up and asked him where he wanted to place me and he said: 'Just a second', and stepped away; two or three more were talking to him about some work, and he said: 'Just a second', when he stepped away, and that's all I remember he said until I came to at the car. I don't know what he done for me.

* * * *

"Q. Now, he said, 'Wait a minute', and then stepped aside. After that, did anything happen to you?

"A. Yes, sir, something hit me, I don't know what it was that hit me, didn't know at the time, and at the time that I come to myself I was at the car and was bleeding all over. I didn't know what hit me. I couldn't testify what hit me at the time. Of course, the man told me afterwards it was a piece of plank.

* * * *

"Q. Mr. Noble, after you left the premises there on Saturday, why did you go back there on Monday morning?

"A. Because he employed me.

"Q. Who?

"A. The foreman.

"Q. Now just tell the jury what he told you?

"A. Well, I went there on Saturday and asked for a job and he said: 'All right, I will hire you; you be back here on Monday morning with your tools to go to work, and we go to work at seven o'clock'. So on Monday morning I got in my car and with my tools drove out there and when I came to the job, I went to him and asked him about where he wanted me to work, and he said: 'Wait a minute.' That is all I remember. I felt the lick. That is all I remember.

* * * *

"Q. You say you saw the foreman on your first visit and applied for a job there?

"A. I did.

"Q. Now I don't know whether I remember you correctly or not, but did you say the foreman or superintendent told you he would give you a job?

"A. He told me to come back to work Monday.

"Q. He employed you then?

"A. Yes, sir.

"Q. He employed you then to work there?

"A. Yes, sir.

"Q. Now, you accepted that as a position of employment?

"A. Yes, sir.

"Q. You did?

"A. Yes, sir.

"Q. So you were actually employed by this company at the time you got hurt?

"A. Yes, sir, because he told me to come back.

"Q. And you accepted the position?

"A. Yes, sir.

"Q. Therefore you were in the employ of the company at the time you got hurt?
"A. Yes, sir.

* * * *

"Q. On Saturday when you appeared there for work or applied for work, he told you to come back Monday. Did you all agree upon the pay you were to receive?
"A. No, sir, did not, he did not tell me how much he was going to pay me.
"Q. There was no agreed amount?
"A. No, sir."

Under this evidence defendant contended that plaintiff was barred from the right of recovery under Article 2315 of the Civil Code.

We do not think so.

If plaintiff had sued defendant for discharging him without cause, it is perfectly clear plaintiff could not have recovered, for there had been no completed contract of employment.

Defendant's foreman testified that he had never seen plaintiff before the day of the accident and emphatically denied that he had employed plaintiff. The testimony of the plaintiff that he was employed by defendant's foreman on the Saturday before the accident is clearly a misconstruction of the facts, for there can be no employment until there is both an employee and an employer. It is clear there had been no perfected agreement of employment entered into between plaintiff and defendant.

Plaintiff testified that defendant's foreman said: "I will give you a job"; not that defendant's foreman had employed him. It therefore follows that plaintiff was not in a position to compel defend-

ant to respond in a suit under the Employers' Liability Act. He was free, therefore, to proceed with a suit for damages under Article 2315 of the Civil Code, and plaintiff's incorrect conclusion that the stated condition of facts constituted him an employee of defendant did not estop him from prosecuting this action.

Appalachian Corporation vs. Brooklyn Cooperage Co., 151 La. 41, 91 South. 539.

Defendant also contends that plaintiff was guilty of contributory negligence in placing himself in a position of danger after being warned by defendant's foreman not to do so.

This is a question of fact. Three witnesses for plaintiff testified that there was no danger zone at the place of employment, and a like number on the part of defendant testified that there was.

Also three witnesses on the part of defendant swore that plaintiff was warned to stand from under the place of danger, and a like number of witnesses on behalf of plaintiff swore that no such warning was given him.

Defendant's foreman testified that at the time of the accident all of the workmen on the job had gone to the top of the building and were at work on the roof, but a number of defendant's witnesses testified that they were at work on the ground floor.

In the last analysis the question to be decided here is one of fact, and the jury who saw and heard the witnesses testify decided this question in favor of the plaintiff, and we think the weight of the evidence sustains their finding.

Defendant further contends that there is no evidence of negligence on its part. The evidence shows that a piece of plank fell from the building upon plaintiff's head, giving him a severe blow. This fact was sufficient to show negligence and to cast upon defendant the burden of showing that it was not responsible therefor. No explanation of why or how the plank came to fall was offered and the jury was warranted in inferring that it fell because of the negligence or lack of proper care on the part of defendant.

When a thing which causes an injury is shown to be under the management of the defendant and the accident is such as in the ordinary course of things does not happen if those who have the management used proper care, it affords reasonable evidence in the absence of explanation by the defendant that the accident arose from want of care.

Sherman & Redfield on Negligence, 5th ed. 59.

The doctrine of res ipsa loquitur means that the jury, from their experience and observation as men, are warranted in finding that an accident of this kind does not ordinarily happen except in consequence of negligence.

Griffin vs. Boston & Albany Railroad Co. 148 Mass. 143; 19 New Eng. 166; 1 L. R. A. 698.

It is fundamental that it is the duty of an employer to furnish an employee or invitee a reasonably safe place to work and to maintain the same in a reasonably safe condition.

Common observation and experience teaches that a piece of plank when properly handled does not fall of its own accord; and, if it does fall, it is a circumstance from which it may be inferred that the piece of board was carelessly handled or stacked.

There is no negligence on the part of plaintiff shown. While he waited at the building at the request of defendant's foreman until the foreman could ascertain if he needed his services the plank fell on him and injured him. He did not assume the risk of the defendant failing to have the plank properly handled or stacked.

Graft vs. Vulcan Iron Works, — Pac. 1016.

This brings us to the question of damages.

Under the testimony of Doctors Frank Walke, J. C. Willis, Jr., and J. D Young as to the extent of the injury sustained by plaintiff, the award of the jury appears to us to be entirely inadequate; while under the testimony of Doctors Louis Abramson, W. F. Harmon and J. W. Murphy, the amount of damages awarded plaintiff appears to be excessive.

The jury that tried this case doubtless arrived at its verdict as to the amount of damages suffered by plaintiff from a consideration of the actual conditions that appeared to exist in plaintiff himself.

The evidence being conflicting, we do not see our way clear to change the finding of the jury on the question of damages suffered.

It is therefore ordered, adjudged and decreed that the judgment appealed from be affirmed.