TUCKER, Judge.
This case arises out of a construction project in the City of Baton Rouge under a contract in which the defendant contractor was to lay large concrete pipes beneath Hollywood Street in Baton Rouge, Louisiana. The contract necessitated the removal of the surface of Hollywood Street and digging a ditch some twenty-nine feet wide and fourteen to fifteen feet deep.
To the south of the ditch being dug and running east and west was a telephone cable. The record indicates that at the beginning of the project the cable was some five feet from the side of the ditch but the distance between the cable and the ditch being gradually narrowed as the job progressed eastward. The total length of the ditch was to be 1885 feet.
While engaged in the digging of the ditch one of the defendant employees cut and damaged the telephone cable at a point some forty-eight feet west of the intersection of Hollywood and Beechwood Streets.
The trial court found that the defendant contractor was negligent and that the plaintiff was not contributorily negligent and awarded damages in the sum of $8,811.05 together with costs. From this judgment defendants appealed.
The lower court observes, “It is obvious in this case that there is an irreconcilable conflict in the testimony of the witnesses for the plaintiff and defendants * * * ” This is certainly so. As is observed by distinguished counsel for the defendant-appellants there were eight witnesses for the plaintiff and three for the defendant whose testimony was completely contradictory. In addition, there was one witness which de *476 fendant-appellant labels as an impartial witness, Mr. Fred A. Allen, employed by City Parish Government of Baton Rouge. It should be observed that Mr. Allen was called by defendants.
Defendants primarily rely on the testimony of Mr. Allen to the effect that he had instructed the contractor to increase the width of the ditch by some six to eight inches and that the ditch was not cut at any other point any wider except at that one place. Mr. Allen testified:
“Q. Do you know whether or not that telephone cable and conduit were later dug up and exposed ? Did you see that done?
A. I believe the telephone people, yes, sir, they did.
Q. Did you see them do it?
A. Yes, sir, to the best of my knowledge, I did.
Q. Well, Mr. Allen, would you tell the court please what configuration or what shape that telephone cable was in after it had been uncovered, exposed by the telephone company employees. I am asking you whether or not it was a straight line or was it with any bow in it?
A. No, sir, it had a slight bow to the north, about six feet. I would say.
Q. A six-foot bow?
Q. Yes, sir.
Q. The bow is from what point ?
A. From about the point of the first— right at just behind where they had started digging at.”

“Q. Well, as a matter of fact, was that cable actually located where it had been staked and marked by the telephone company ?
A. Not at that point, no, sir.”
* * * * * *
“Q. If the telephone company cable had been laid in a straight line as indicated by the stakes placed there by the telephone company, would it have come into a collision course with this ditch at the point where this cable was cut? In other words, if it followed that line of stakes that the telephone company had put down would this break have occurred at that point?
A. No,, sir, I don’t believe it would have.”
This testimony is directly contradictory to the testimony of Gordon B. Winston, a consulting engineer, who was working with the telephone company at that time who said:
“Q. Well, then you knew that all along this excavation the telephone conduit would be something in the neighborhood of two to three feet from the edge of the ditch that was being dug by the contractor ?
A. Not for the entire length, but that’s true in the area where it was cut, yes, sir.
Q. And you had this borne out by actually excavating parts of the cable ?
A. That is correct, sir.” (page 36 of tr.)
It also contradicts the testimony of William A. Crawford who testified:
“BY THE COURT:
Q. Let me ask you a question. You said that the wall of the ditch was a straight line except where the indentation was made by the piece of equipment which at that point apparently struck the line. Could you tell me how much of a recess or depth that this indentation went?
A. Yes, sir. Our duct is buried about forty inches deep, the top of the tile, about forty inches deep, and I would say that indentation went plumb over *477 the duct. I would say it would be about, oh, I guess three or four feet out of line.
Q. Three or four feet out of line?
A. It had to be because they were digging about two feet from the tile and when he put that big machine I guess it must cut three or four — it must cut about three fee or four feet wide.
Q. Beyond the straight line of the ditch ?
A. Yes, sir.” (page 89 of tr.)
Mr. Crawford indicates also that the operator of the machine that struck the cable dug the edge of the ditch out of line about three feet at the place of the cutting. This testimony is corroborated by Durwood O. Bearden, another employee of the telephone company.
A thorough reading of the record and reasons for judgment clearly indicate that this was a classic decision in which the trial court either had to believe the defendants’ witnesses or the plaintiff’s witnesses. The trial court concluded, “ * * * after hearing the evidence in this case the court is satisfied that the cause of the accident was the failure of the contractor to use due care in proceeding to widen the ditch when it was evident that he was in close proximity to the line marking the telephone conduit. In this respect the contractor was at fault and must bear full responsibility for the damages unless the court finds contributory negligence on the part of South Central Bell Telephone company employees. The court has considered the evidence very closely and finds that there was no contributory negligence on the part of South Central Bell’s employees.”
This court has said before in the case of Fairman v. Robert, 181 So.2d 459 (La.App. 1st Cir., 1965):
“Factual determination of trial court will not be disturbed on appeal in absence of manifest error, and this is especially true where testimony is conflicting and trial court must evaluate credibility of witnesses.”
See also Pecoraro v. Galvin, 243 So.2d 307 (La.App. 4th Cir. 1971)
We cannot conclude that the lower court erred in its evaluation of the testimony in the absence of manifest error.
For the foregoing reasons, the judgment of the trial court is affirmed at appellant’s costs.
Affirmed.